[PHILADELPHIA, MARCH 30, 1832.]

## Case of PETER RHOADS' Estate.

### APPEAL.

The regular confirmation by the Orphan's Court of an administration account, shewing a deficiency of personal assets for the payment of the debts of the decedent, is a *final settlement*, within the meaning of the act of 1st of *April*, 1811; and authorizes the Orphan's Court to make an order for the sale of the real estate of the decedent, for the payment of his debts. ·

If the question, whether or not a partition has been made, is presented to the Orphan's Court, as an incident to the principal subject before them, they must decide it; or they may, if they think proper, direct an issue to determine it.

When lands devised to several, as tenants in common in fee, have been appraised in separate lots by persons chosen by the parties, and the devisees enter into a written agreement, declaring that they have made a full and just partition thereof, according to the appraisement and allotment, and enter into and hold possession of the same, this is a valid and binding partition, notwithstanding the agreement contain a stipulation that the parties shall contribute equally to the payment of an existing claim upon a part of the estate, and a covenant that they shall before a certain day execute a deed of partition, or such other legal assurance, as may be deemed necessary.

An agreement by a *feme covert* making partition of her real estate, is binding, without a separate examination and acknowledgment; particularly if it be to her advantage, and not objected to by her, or those claiming under her.

If the devisees of lands as tenants in common, make partition by agreement, and the portion of one of them be sold by order of the Orphan's Court for the payment of the debts of the testator, that court has power by virtue of the act of 1st *April*, 1811, to decree contribution by the other devisees.

THIS case came before the court on an appeal from the decision of HUSTON J., at a Circuit Court held in *Lehigh* County, in *April*, 1831, .

(Case of Peter Rhoads' estate.)

reversing the decree of the Orphan's Court of that county, relative to the estate of *Peter Rhoads*, deceased.   The case was as follows: *Peter Rhoads* being seized of several tracts of land and other real estate, situate in *Lehigh* county, by his will devised the residue of his estate to his children, *George, Peter, John,* and *Catherine,* share and share alike, as tenants in common in fee.   The testator died, about the 18th of *December,* 1814, and on the 15th of *April,* 1815, *Peter, George,* and *John Rhoads,* and *Jacob Blumer,* and *Catherine* his wife, (late *Catherine Rhoads,*) by an agreement under their hands and seals, made " a full and just partition between them, of all the messuages, lands, tenements, and hereditaments which they theretofore held as tenants in common, by virtue of the last will and testament of their father the said *Peter Rhoads,* the elder, deceased, lying in the county of *Lehigh,* and in manner following, to wit—

To *George Rhoads* was allotted:

" 1. A messuage, farm and tract of land, marked in the draught of *South Whitehall* tract No. 2, containing a hundred and forty-one acres, and a hundred and thirty perches, late in the possession of *George Adam Newhard.*

" 2. A tract of woodland in *Salisbury* township, bounded by lands of *James Greenleaf, Rudolph Smith* and others, containing twelve acres and a hundred and fifty-four perches.

" 3. Another tract of woodland in said township of *Salisbury,* marked in the draught of division of the *Lehigh Hill* tract No. 2, containing eight acres and a hundred and forty-four perches, with their appurtenances.

" All of which the said *George Rhoads* accepted at and for the sum of eleven thousand and sixteen dollars and twelve cents.

To *Peter Rhoads* (the younger) was allotted:

" 1. The stone messuage, barn and two lots of ground in *Allen* street, in the town of *Northampton* (then in his possession) containing together in front a hundred and twenty feet and in depth two hundred and thirty feet.

" 2. All that tract of land, marked in the draught of division of *South Whitehall* tract No. 3, containing a hundred and thirty acres and ninety-two perches.

" 3. A tract of woodland, situate in *South Whitehall* township aforesaid, bounded by lands of *Adam Dorney, Jacob Shantz* and others, containing five acres and a hundred and two perches.

" 4. Another tract of woodland in *Salisbury* township aforesaid, marked in the said draught of division of the *Lehigh Hill* tract No. 3, containing seven acres and fifty-three perches, with the appurtenances.

" All of which the said *Peter Rhoads,* the younger, accepted at and for the sum of thirteen thousand, five hundred dollars.

To *John Roads* was allotted:

" The messuage, farm and tract of land (then in his possession)

(Case of Peter Rhoads' estate.)

marked in the said draught of division of the *South Whitehall* tract No. 1, containing two hundred and ten acres·with the appurtenances.

" Which the said *John Rhoads* accepted at and for the sum of sixteen thousand and eight hundred dollars.

To said *Catharine Blumer*, her heirs and assigns, was allotted:

"1. All that tract of land, marked in the said draught of division of the *South Whitehall* tract No. 4, containing a hundred and fifty-seven acres and a hundred and fifty-two perches.

" 2. A lot of woodland in *South Whitehall* township, aforesaid, bounded by lands of *Daniel Good*, *Henry Blumer* and *J. Leonard Steininger* and others, containing three acres and thirty three perches.

" 3. Another tract of woodland in *Salisbury* township, aforesaid, marked in the said draught of division of the *Lehigh Hill* tract No. 1, containing nine acres and a hundred and thirty perches with the appurtenances. ·

" All of which the said *Jacob Blumer* and *Catharine* his wife, accepted at and for the sum of ten thousand seven hundred dollars."

By this agreement which was not acknowledged, the parties agreed to contribute equally towards paying and satisfying all claims which the heirs of *James Allen* deceased might have to a portion of the estate forming part of the allotment of *Peter Rhoads*, and covenanted, that they would, on or before the first day of the following *August*, execute a deed of partition, or such other legal conveyance as might be deemed necessary " for the well and sufficient granting, conveying, assuring, and confirming unto each of the said parties, their heirs and assigns in severalty forever, the several portions above allotted to them respectively, according to the true intent and meaning of the agreement."

The parties to the partition held the portions respectively allotted to them, in severalty from the date of the agreement, and continued to hold the same, except a certain part, which was sold for the payment of the debts of the testator as will be mentioned hereafter.

*Catherine Blumer* died about the 31st of *December*, 1817, leaving issue by her said husband, who survived her, six children.

*Peter* and *George Rhoads* were the executors of their father's will. *George*, on the 29th of *March*, 1819, renounced the executorship, and on the 4th *February*, 1820, was, at his own request, dismissed by the Court.

The debts of the testator, at the time of his death, and at the date of the agreement of partition between his devisees, did not exceed six thousand dollars. *Peter Rhoads* the acting executor settled an account of his administration, on the    th of *May*, 1819, from which it appeared, there was a deficiency of personal assets for the payment of debts, to the amount of four thousand nine hundred and thirty dollars, and eighteen cents, besides interest. He therefore applied to the Orphan's Court, for an order to make sale of the real estate of the testator for the payment of his debts, which was grant-

(Case of Peter Rhoads' estate.)

ed on the 4th of *February*, 1820. On the 5th of *May*, 1820, he reported that in pursuance of the said order he had made sale of part of the said lands, to wit—

"One tract situate in *South Whitehall township*, bounded by lands of *John Frey, Abraham Greissemer*, late *Casper Schenœbruck, Frederick Swander*, and other lands of said deceased, containing one hundred and forty-one acres, one hundred and thirty perches, strict measure, being part No. 1. of the portion allotted to said *George Rhoads* in the partition aforesaid, also,

"One lot of woodland situate in the township aforesaid, bounded by lands of *Adam Dorney, John Leonard Steininger, Jacob Schantz,* and *Christian Steininger*, containing five acres, one hundred and four perches, strict measure, being part No. 3. of portion allotted to said *Peter Rhoads* the younger, in the partition aforesaid, for the sum of three thousand dollars, two thousand dollars in hand, and the rest or remainder in five yearly payments, from the first day of *April*, 1821."

*Peter Rhoads* the executor, settled an account with the estate of his testator, on the 1st of *September*, 1824, exhibiting a balance in his favour of four thousand and twenty seven dollars and three cents. This amount was presented to the Orphan's Court and confirmed *nisi*, on the 3d of *December*, 1824.

In the meantime, namely, on the 30th of *August*, 1824, *George Rhoads* obtained from the court of Common Pleas of *Lehigh* county, a discharge as an insolvent debtor, and on the same day executed an assignment to trustees of all his property, real, personal and mixed, to which he was in any manner entitled.

On the 11th of *September*, 1828, the trustees of *George Rhoads* presented a petition to the Orphan's Court of *Lehigh* county, reciting the devises in the will of *Peter Rhoads* the elder; the partition of his estate among his devisees; the sale by *Peter*, the acting executor, of part of the shares allotted to *George* and *Peter* for the payment of the debts of the testator, and praying the court to award a citation to *Peter Rhoads, John Rhoads, Jacob Blumer*, and the heirs of his late wife *Catharine* (naming them all,) to appear at such time and place as the court should appoint, "and show cause why the court should not decree what contribution should be made by the aforesaid devisees, their heirs and assigns respectively, towards the payment of the debts chargeable on the real estate of said testator, and particularly· what contribution should be made by the said *Jacob Blumer* and the children of the said *Catharine Blumer*, late *Catharine Rhoads*, deceased, and the said *John Rhoads* and *Peter Rhoads*, (the younger) towards payment of the debts of said testator, and for which said tract of one hundred and forty one acres and one hundred and thirty perches (part of the portion allotted in said partition to said *George Rhoads*), was sold by said *Peter Rhoads* (the younger) as executor aforesaid."

Upon this petition a citation issued according to its prayer, returnable at the next stated Orphan's Court, on the 13th of *December*, 1828, when the court appointed auditors "to ascertain the amount of

(Case of Peter Rhoads' estate.)

debts yet due by the estate of said deceased, and the amount of the contribution to be made by the several devisees, towards the payment thereof, including also the debts for which part of the real property of said deceased, has been hitherto sold by his executors, by virtue of an order or orders of sale granted to him by the court."

After several renewals of the order and the substitution of other auditors in the place of those first appointed, a report was made on the 15th of *May*, 1830, by a majority of the auditors last appointed, as follows :

" That an agreement was entered into by the heirs and devisees of the said *Peter Rhoads*, deceased, bearing date the 16th day of *April*, A. D. 1816, under the hands and seals of *Peter Rhoads, Junior, George Rhoads, John Rhoads, Jacob Blumer,* and *Catharine* his wife, by which said agreement they divided the lands of the said *Peter Rhoads,* deceased, the same having been valued and appraised, in the following manner, that is to say :

| | | |
|---|---|---:|
| The part accepted by *George Rhoads,* valued at | | $11,016 12 |
| do. | *Peter Rhoads,* | 13,500 00 |
| do. | *John Rhoads,* | 16,800 00 |
| do. | *J. Blumer & wife,* | 10,700 00 |
| | | $52,016 12 |

" The debts owed by the Estate of said deceased, as far as we could ascertain the same (*Peter Rhoads,* the executor, not having furnished us with any information, more than what we could obtain from the account filed in the office) are by our estimate of the sum of six thousand dollars.

| | |
|---|---:|
| Amount of the Estate, as per appraisement, deducting debts, balance, | $46,016 12 |
| The said balance of forty six thousand and sixteen dollars and twelve cents, divided between the heirs, each share | $11,504 03 |
| From the share deduct *George Rhoads'* valuation | 11,016 12 |
| Balance due *George Rhoads* on the 16th of *April,* 1816. | $487 91 |
| By the same method of calculation *Peter Rhoads* owes | $1995 97 |
| *John Rhoads* owes | 5295 97 |
| *Jacob Blumer* in right of his wife, has to receive | 804 03 |

" It appears that the parties above named, went into possession of their respective shares, and are in possession yet, except such a part which has been since sold to pay the debts, to wit ; the land accepted by *George Rhoads,* sold *May* 15th, A. D. 1820, by an order of the Orphans' court, to pay the debts of the deceased, &c.

" If the court should be of the opinion, that the agreement and partitions are binding on the parties, then *Jno. Rhoads* has to contribute to *George Rhoads* for the sale of his land, two thousand eight hundred

(Case of Peter Rhoads' estate.)

and eighty dollars and sixteen cents, with interest on the same, from the 5th day of *May*, 1820, to the 7th of *May*, A. D. 1830—amounting to four thousand six hundred and eight dollars and eleven cents—if the court should be of opinion, that interest should be charged on the several sums due by *John Rhoads* and *Peter Rhoads* on the valuation aforesaid, and on the sums due on said valuation to *George Rhoads* and *Jacob Blumer* or his heirs.

" If the court should be of the opinion, that no interest is to be charged on their several sums, then *George Rhoads* has to receive in contribution the sum of two thousand eight hundred and eighty dollars sixty-six cents, without prejudice to his right to the sum of four hundred and eighty seven dollars ninety-one cents, due him in the valuation aforesaid.

" But if the court should be of the opinion, that the partition and valuation made by the said parties, is not binding, and that the agreement so entered into is not binding, then we find no contribution is to be made to *George Rhoads*; but, that each pay rent for the part of the estate each held or was charged with in the following manner, to wit:

| | |
|---|---:|
| *John Rhoads*, for the first ten years, at the rate of one hundred dollars per year, amounting to | $1,000 |
| For five years at one hundred and fifty per year | 750 |
| | $1,750 |
| *Peter Rhoads*, fifteen years at one hundred and fifty per year | 2,250 |
| *Jacob Blumer* or his heirs, at twenty five per year | 225 |
| *George Rhoad's*, for the time he held his land in possession | 375 |
| Total | $4,600 |

" All of which we respectfully submit to the court for their further determination.—Witness our hands, *May* 7th, 1830."

To this report, exceptions were filed on the 4th of *September*, 1830, and a rule was obtained to show cause why it should not be set aside. The court at the same time ordered " the agreement for the partition of the real estate of said deceased among the devisees to be filed with the clerk of this court, and the matters relative to the contribution, held under advisement until next *Wednesday* morning at ten o'clock, and *Peter Rhoads* executor of said deceased, to furnish to the court by that day, under oath or affirmation, a detailed statement of the debts due by the said deceased, showing the principal and interest thereon accrued, and keep the principal and interest distinct from each other, or in default thereof, that the court would confirm the report of the auditors, and decree the partition of the real estate of the said *Peter Rhoads* deceased, to and amongst his devisees, as reported by the auditors, to be good and binding upon

(Case of Peter Rhoads' estate.)

said devisees; and would also decree the contribution reported by the said auditors, to be made according to their report."

*Peter Rhoads,* the executor, having neglected to furnish the required statement of the debts of the deceased, the court, on the 8th of *September,* 1830, dismissed the exceptions, discharged the rule, confirmed the report of the auditors, and decreed " the agreement and partition of the real estate of the said *Peter Rhoads* deceased, to and amongst his devisees as reported by said auditors, to be good and binding upon said devisees;" and further decreed " the contributions reported by the said auditors, to be made according to their report, with interest from the 5th of *May,* 1820, when *George Rhoads'* land was sold."

From this decree of the Orphan's Court, *Peter* and *John Rhoads* entered an appeal to the Circuit Court, where the following opinion was given by

" HUSTON J.—An agreement between tenants in common to divide the lands held by them in common, when reduced to writing, and signed and sealed by them, will generally be carried into effect by our courts, as though deeds of partition had been actually executed. But where something remains to be done by the parties, before the deeds are to be executed, and that something is not done, where in the meantime the situation of the parties is greatly changed, and the value of particular parts of the property greatly increased or diminished— where the death of some of the parties has rendered the execution of deeds impracticable, in short, where the change of circumstances in any respect has caused, that carrying that agreement into effect, would produce injustice between the parties, a court may, and in some cases ought, to refuse to carry it into effect. I give no opinion, however, on these matters, in this case, because I believe, there was a mistake in the Orphan's Court in considering this matter as within their cognizance and jurisdiction. I admit, that where the heirs of a deceased person are all of age, they, or one of them, may apply to the Orphan's Court to have partition made as though some of them were minors, but where they are all of age, and do not proceed in the Orphan's Court to obtain partition but by agreement and contract between themselves, the validity of such contracts is more proper for the decision of the court of Common Pleas than an Orphan's Court, and if its validity comes incidentally before an Orphan's Court, and is denied by some of the parties, perhaps the better way would be, either to direct an issue in the Common Pleas, to decide, whether there was or was not a partition made between the parties, or to stay the proceedings in the Orphan's Court, until one of the parties brought an adverse suit in the Common Pleas to decide this matter.

" The present case is involved in difficulty in whatever point of view you consider it. It must not be forgotten, that although *Catharine Blumer* signed this article of agreement with her husband, yet she never acknowledged that instrument in due form of law. It is

(Case of Peter Rhoads' estate.)

then, as though she had never executed it, and although if long acquiesced in, it might bind her heirs, yet in other circumstances they might not be bound; and if to consider it binding, would have the effect of depriving them of a full share, or any share, as may be the case, if the unpaid debts are levied on their parts, or if in any other respect, it would sweep from any one of them his interest in the intestate's estate and leave others in affluence. It is questionable, whether this agreement ought to be considered at this length of time, binding between the parties, so questionable, depending upon so many facts and circumstances, as, that it ought not to be decided incidentally in any court, much less in one within whose jurisdiction it does not properly come. I repeat, that I do not mean to give an opinion, whether it is or is not binding on the parties, but merely to say, that there is in it enough of importance and enough of difficulty, to make it proper, that *George Rhoads,* or his assignees, should bring a writ of partition in the Common Pleas of this county, to obtain a partition of the lands of the intestate. If the other heirs do not oppose this, the lands sold for debts will be considered equally the loss of the heirs and the remaining lands will be divided equally among the heirs. If they, or any one of them does oppose it, the effect of the article of agreement will come directly before the court and jury, and a solemn decision will settle the matter, so that all parties will be forever bound, as well minors as others, for the court will take care, that guardians will be appointed to take care of their interests. If there will be difficulty in obtaining justice as to the rents and profits of the lands since the year 1816, that difficulty must be encountered, and perhaps justice may be obtained in proper form of action or actions, and even though the statute of limitations, or some other cause, may prevent complete justice as to these rents and profits—it is better that should be sustained, than the title to all the lands of the intestate should remain in doubt and uncertainty. I am therefore of the opinion that the decree of the Orphan's Court should be reversed."

The trustees of *George Rhoads* appealed from this decision to the Supreme Court, and filed their reasons for the appeal in writing, which it is unnecessary particularly to specify.

*Davis* and *J. Sergeant,* for the appellants.—This case presents a single question, which though of considerable magnitude, is very plain. It depends upon the true construction of the act of 1st *April,* 1811, *Purd. Dig.* 673. The appellants have sustained a manifest wrong, and if they do not find a remedy in the provisions of this act, they are entirely without one. The act provides, that the Orphan's Court shall have power in all cases where executors or administrators, after the final settlement of an account, apply for an order to make sale of the real estate of the testator or intestate for the payment of debts, to decree " what contribution shall be made by the heirs or devisees respectively, towards the payment of any debts chargeable on the real estate of any testator, either generally, in the first instance, or where the land decreed to be sold shall have been in any manner

(Case of Peter Rhoads' estate.)

devised to any heir or devisee after any such sale being made." The land devised to *George Rhoads* by the will of his father, was sold for the payment of his father's debts, and his trustees claim contribution from the other devisees. If the devises had been of specific pieces of land no doubt could have been raised as to the right to contribution, or as to the power of the Orphan's Court to enforce it. But the devisees held under the will as tenants in common, and here the difficulty has arisen. Their interests however were distinct. They held undivided moieties and their only unity was that of possession. 2 *Bl. Com.* 182. 191. 194. The partition however placed them in the same situation as if their respective portions had been specifically devised. Partition neither enlarges nor diminishes the estate of each tenant in common, but ascertains the particular part of each, which he did not know before, and gives it to him in severalty. The tenure however is no more changed by the partition, than by the adjustment of a boundary. The parties hold after it, by exactly the same title as that by which they held before it. The question then arises, whether a valid partition was made by the devisees of *Peter Rhoads*, and the whole evidence clearly proves that there was. The agreement by which it was made, designates each purpart with perfect accuracy and certainty, and the parties took and continued to hold possession of their respective allotments, in severalty, agreeably to the terms of the partition. Being compellable to make partition, they were competent to do it by agreement without process of law. It was not necessary that it should be by deed. It might have been done even without any written agreement, for even a parol partition between tenants in common made by marking a line of division on the ground, and followed by a corresponding separate possession, is good, notwithstanding the act for the prevention of frauds and perjuries. *Ebert* v. *Wood,* 1 *Binn.* 216. Nor was the circumstance that one of the parties, *Catharine Blumer*, was a married woman, any objection to its validity. If the partition had been unequal, perhaps it would have been voidable by her, though it was not void; but as it was equal, taking the money to which she was entitled, and the land together, it was binding on her and her heirs. *Co. Litt.* 170, *a*, 171, *a*. It is true that at common law owelty of partition cannot be effected by money, but in *Pennsylvania*, the difference between the value of the shares admits of a pecuniary compensation. The separate examination of *Catharine* was not necessary. If she could not make partition by agreement, without a separate examination and acknowledgment, she could not do it at all; for she was to make no grant, and the act of assembly requiring the separate examination of a *feme covert*, refers only to grants. She could have been compelled to make partition, notwithstanding her coverture, and was therefore competent to do it voluntarily. She has done so, and neither she nor any one claiming under her, ever complained of the agreement or wished it annulled. An objection in her name comes with a bad grace from those whose success would operate to the disadvantage of her minor

(Case of Peter Rhoads' estate.)

children. But whether the heirs of *Catharine* were bound by the partition or not, *Peter* and *John Rhoads* clearly were. *Burke* v. *Lessee of Young,* 2 *Serg.* & *Rawle,* 388. As regards them, it was complete. It was not an executory agreement, containing conditions to be performed *in futuro,* but a solemn and deliberate declaration, under hand and seal, that "a full and just partition" had been made. The different estates were appraised by impartial persons, and the parties accepted their respective allotments, perfectly satisfied with them at the time. The agreement to contribute equally to satisfy the claims of the heirs of *James Allen,* could not affect the immediate binding effect of the partition. It was merely an agreement to satisfy those claims if they ever should be enforced, but the efficacy of the partition was entirely independent of it. Nor does the covenant to execute a formal deed of partition, give the agreement an executory character. It was nothing more than a covenant for further assurance, the fulfilment of which was not necessary to effectuate the partition. Many estates in *Pennsylvania* are held by a much less formal title. Under the agreement, the parties were fully secured in their respective possessions, and so considered themselves, for although by the covenant, they were entitled to call for a deed, they never thought proper to do so. They cannot now avail themselves of this circumstance, to overthrow their own agreement. The appellants could not institute proceedings for a partition in the Common Pleas, for that would have been to disaffirm the partition which they contend had been already made.

The validity of the partition being established; the next question is, what was the proper remedy for the assignees of *George Rhoads*? The act of 1st of *April,* 1811, giving the Orphan's Court jurisdiction, comes in aid of the common law remedy of vouching the other tenants in common by force of the warranty in law, to give recompense on an eviction. This tribunal is the fittest we have for administering relief in such cases. It has the powers of a court of equity to a certain extent. *Yohe* v. *Barnet,* 1 *Binn.* 358 ; and most of the cases of contribution are in equity, where it is more easily enforced than at law. *Campbell* v. *Mesier,* 4 *John. Ch. R.* 339. *Clowes* v. *Dickinson,* 5 *John. Ch. R.* 240. *Stevens* v. *Cooper,* 1 *John. Ch. R.* 430. *Sir Wm. Herbert's case,* 3 *Co. R.* 14. It is a proceeding *in rem,* and the Orphan's Court have power to call before them all the parties interested; to act either with or without the intervention of a jury, as a court of equity, and to do full and complete justice between the parties. *Guier* v. *Kelly,* 2 *Binn.* 299. *Nailer* v. *Stanley,* 10 *Serg.* & *Rawle,* 454. It is indeed doubtful whether an action at common law would lie in *Pennsylvania* for contribution in a case like the present. If it would, the courts must assume the jurisdiction, as they did in the case of legacies charged upon land, *Brown* v. *Furer,* 4 *Serg.* & *Rawle,* 213. *Gause* v. *Wiley,* 4 *Serg.* & *Rawle,* 509. That was done from the want of a court of chancery, a reason which does not apply to this case, because the Orphan's Court possesses the

(Case of Peter Rhoads' estate.)

power of a court of chancery in reference to matters of this sort. There would therefore be no propriety in an assumption of jurisdiction by the common law courts, even if it were not expressly forbidden by the act of 21st of *March*, 1806, *sec.* 13. 4 *Sm. L.* 332, which declares, that where a remedy is given by act of assembly, nothing shall be done according to the provisions of the common law. The Orphan's Court then having complete jurisdiction of the matter of contribution, it follows, that any question of law or fact, growing out of the principal subject must be within its cognizance, as an accessary. *Guier* v. *Kelly*, 2 *Binn.* 299. The question of the validity of the partition, was incidental to the principal question before the court, and so interwoven with it, that it was impossible to determine the one, without deciding the other. The Orphan's Court were therefore competent to the decision of the question, and it does not lie in the mouth of the appellees who denied the validity of the partition, and referred its decision to the court upon depositions, now to deny the power of the court to make that decision. If they were desirous of having a trial by jury, they might have had it, by applying to the court for an issue. *Wallace* v. *Elder*, 5 *Serg. & Rawle*, 146.

The amount by which the shares of *Peter* and *John* exceed equality, is a fund in their hands, belonging to the devisees in common, and equity will apply it in ease of the common burthen. *Peter* the executor, having contumaciously refused to render an exact account of the debts due at the date of the partition, and he and *John* having acted in concert in this matter, the court will take it as confessed, that they did no exceed six thousand dollars. That sum being less than the amount due from them for owelty of partition, as appears from calculation, as well as the report of the auditors, it follows that they ought to have paid all the debts. Under such circumstances, a chancellor would not hesitate to decree that they should pay *George* the whole amount of what his land was sold for, with interest from the time of sale. Even this would not do him full justice, the true value of his land being his due, and not what it sold for at sheriff's sale. *Cheeseborough* v. *Willard*, 1 *John. Ch. R.* 415.

If there was any irregularity in the proceeding antecedent to the sale, it is not competent to *Peter* who was the author of it, to controvert the sale on that account. He asks of the court equity, and yet asks that a sale made by himself should be avoided on account of an irregularity committed by himself, to the injury of the purchaser and without giving him an opportunity of being heard. No other account than that which was the foundation of the sale, could be obtained. The executor refused to furnish any other, and no one else knew what debts were due. But there was no irregularity. The account was finally settled by the executor, within the meaning of the act of assembly. The final settlement of an account does not mean one which closes all the accounts of the estate. The final settlement contemplated by the act, is one confirmed by the Orphan's Court. There is an obvious distinction between the final settlement of an

(Case of Peter Rhoads' estate.)

account and the settlement of a final account. It is impossible the legislature could have meant the winding up of an estate. The object was to remedy the inconvenience and expense of a suit and sale by the sheriff by each creditor, by effecting a sale for the benefit of all, and this could only be done, while the debts remained due. At all events, the Orphan's Court having power to order a sale by an executor, and having done so, it is to be presumed, nothing to the contrary appearing, that all the preliminary requisites have been complied with.

*Gibons, Jones,* and *J. R. Ingersoll* for the appellants, contended, that the decision of the Orphan's Court in this case, was wholly unsupported by law. It is not sanctioned by any act of assembly, nor by the common law, supposing the Orphan's Court to have power to apply common law remedies. The whole proceeding originated in a misconception of the act of assembly and the powers of the court. Jurisdiction in cases of partition is given to the Orphan's Court, only in cases of intestacy. Act of 19th of *April,* 1794. *s.* 22. If the heirs, *sui juris* agree to make partition, the Orphan's Court cannot enforce the agreement. This must be done by an action upon the agreement according to its form and effect, or by ejectment. The subject-matter being the estate of an intestate does not make the agreement less a contract, or deprive it of any of its qualities, or change the jurisdiction through which it is to be enforced. A legal partition in this case could only be effected by deed, or by writ out of the court Common Pleas, conformably to the act of 11th of *April,* 1799, *Purd, Dig.* 683. The Orphan's Court is not the forum which has jurisdiction of the question in any shape in which it can be presented. It is not the forum either to enforce a contract for partition, or to. make partition ; it cannot compel the parties to make partition, nor perfect an imperfect one, nor decree a specific performance. The appellants claim what they call contribution, on the basis of the articles, alleging default in the appellees, but it is rather a proceeding to enforce the contract, than to obtain contribution, and beyond the control of the Orphan's Court. The proceeding is obnoxious to objection on an another ground. The four children of *Peter Rhoads'* were devisees in common of his real estate, and if the alleged partition is invalid, as we contend, they are still tenants in common, and no one has any specific allotment. The loss therefore occasioned by the sale was common and apportioned by the mere act of taking the property. The act of 1st of *April,* 1811, does not apply to such a claim, but to specific claims of persons holding in severalty. If on the other hand the partition is valid, then the parties are in court, as contracting parties, having no common interest, but holding unequal portions by virtue of the articles. It follows that if *George* has sustained a separate loss, it is by virtue of the articles, and not of the will, which was the foundation of his title as tenant in common only. By the will, he had a common interest in the whole. By the partition, he parted with this common interest, and acquired a sole interest in a part. This sole interest he brings into court as a grantee, and not as

a devisee, for partition by tenants in common must be by conveyance, though it is otherwise between partners at common law. If partition has been made, the parties as a necessary consequence, have equivalents, if not in land at least in value, so that in the contribution to pay debts, each should contribute equally. But this was not the decree of the court. It was that *John* should pay the whole, which is entirely inconsistent with the idea of contribution. The result therefore is, that if the partition was valid, the court has no jurisdiction, because *George* claims his allotted portion under the articles and not by the will, jurisdiction being given only in cases of specific devises, "where the land devised to be sold, shall have been in any manner devised to any heir or devisee." If the partition was not valid, then the decree of the Orphan's Court was wrong in declaring that it was valid. At all events the court must exercise its jurisdiction, according to the devise *modo et forma*, and not according to a contract materially changing the interests, estates and tenure created by the will. The whole of the proceeding was founded on a misconception of the powers of the Orphan's Court. The act of 1st of *April*, 1811, gives no contribution in case of eviction, after partition. It applies only to estates given by will. That court has no power to enforce common law remedies, and if it had, the provisions of the common law differ widely from this decree. If the partition is valid, it is in the nature of an exchange, in which land is given for land, and in which there is a condition of reentry and a warranty to give recompense in case of eviction. *Bustaret's case*, 4 *Co. R.* 121, *b*. Yet the two remedies amount to the same thing. If the party evicted reenters, he gets back his land; if he sues on the warranty, he recovers the same land. 10 *Vin.* 138. *Exchange, P.* 1. By the application of this principle, *George Rhoads* by reentry, would be remitted to his estate in common. So in the case of partition between parceners. By eviction the partition is defeated, and by reentry the party is remitted to the undivided interest in co-parcenary. 16 *Vin.* 230, *Q.* 3 *Co. Litt.* 273, 4. Or a parcener may sue upon the warranty, but the recovery is not according to the loss, but of an aliquot part of the residue. 4 *Co. R.* 121. 1 *Prest. Ab.* 303, 304. *Cro. Eliz.* 902. The same law prevails in the case of eviction of tenant in dower. This sort of redress is equitable, and the assignees of *George Rhoads*, must be content with it, unless there be matter of contract on which they can rely. If however the agreement was not a mere partition, but a contract was superadded, the argument is strengthened whether the contract be considered a covenant of warranty or a covenant to pay the estimated values of the land, or any other covenant. As a contract it cannot be enforced by the Orphan's Court, as it would deprive the party of his constitutional right of a trial by jury in the common law courts. If there was no express covenant, the law will not imply what the Orphan's Court decreed. The parties to the alleged partition were purchasers from each other, subject to a charge, and the Orphan's Court might have prevented injury by a

(Case of Peter Rhoads' estate.)

sale of the purpart of each, if the parties admitted the partition. This was all they could do. The fluctuation in the value of lands renders a money contribution inequitable. It would make eviction a benefit. *Nailer* v. *Stanley*, 10 *Serg. & Rawle*, 450, is in conformity with these views. The appellants have no right to the money decreed upon any principle of law or equity, or under any provision of the act of assembly. They can claim it in no form unless they can enforce the contract, which brings us back again to the question of jurisdiction.

But there was no valid partition. *Catherine Blumer*, one of the parties to it, was a *feme covert*, who underwent no separate examination, and made no separate acknowledgment of the agreement. She died leaving minor children. The proportion allotted to her was the least, and therefore to the extent of the deficiency she was a seller to the other parties. There was, however, no consideration for the purchase, and no promise by the other parties to pay. If there had been, it would have enured to the benefit of her husband. There was no promise to pay debts, and if there was, this was not owelty, for personal security is not owelty for realty. Owelty must be something that can descend to the heir; such as a rent charge, a right of way, a common of pasture. 16 *Vin. Partition*, G. 2, p. 224. *Co. Lit.* 10, *a. Plowd.* 134. *Bro. Partition*, 25. *Catherine* might have bound herself if she had thought proper, but she did not, and consequently the other parties are not bound. Her act was absolutely void, and could not be rendered valid, which distinguishes her case from that of an infant, whose acts are merely voidable. *West* v. *West*, 10 *Serg. & Rawle*, 445. The articles contemplated, the execution of deeds, and were not designed to be in themselves a binding partition. They were merely the first step towards what was to be consummated by other acts for the performance of which the agreement stipulated. The utmost that can be said is, that an equitable partition was made, but in matters of partition, equity will do nothing unless the title is perfect and undisputed, which was not the case here. The interest of *Catherine* remained unaffected by the agreement. A married woman can do nothing to affect the title to her real estate except in the manner pointed out by the act of assembly, and no length of acquiescence in such an agreement will give it validity. *Willes*, 248. *Whaley* v. *Dorsey*, 2 *Sch. & Lef.* 367. 371. *Bunb.* 322. *Wilkin* v. *Wilkin*, 1 *John. Ch. R.* 111. *Cartwright* v. *Pultney*, 2 *Atk.* 380. 2 *Vern.* 232. There are other difficulties too, in the way : It is assumed that *Peter* and *John* were to pay the debts, but of this there is no proof. In *April*, 1815, the debts were not known, and there is no promise by one to pay them more than by another. The language of the articles, is the same in respect to all. A promise was made to no one; no one was designated to receive the money, or to pay the debts. *John*, who is now attempted to be charged with them, could not pay them, for he was not an executor. The order of the Orphan's Court required the au-

ditors to ascertain the debts then remaining due, and instead of doing this, they estimate by conjecture the debts due at the time of the testator's decease.   They assess no contribution upon the heirs, towards the outstanding debts, but proceed against *John* alone, and direct him to pay the full value of that part of *George's* portion, which was sold.   This was no compliance with the order, and it is an abuse of language to call what they directed contribution.   They ought, if they assumed the validity of the partition, to have made an assessment on each of the devisees, according to the ratio of the estimated value of their respective allotments, which would have been contribution upon the basis of the agreement.   The Orphan's Court had no jurisdiction for another reason.   The act of 1811, gives it jurisdiction, only after the final settlement of an account, and a decree of sale founded upon an account not final, gives no title.   The proceedings in this case seem to have had in view the act authorizing a sale in a case of intestacy, where there is a deficiency of assets, rather than the act of 1st *April*, 1811.   It is alleged that the executor has filed an account in the Register's office, and not that he has finally settled his account in the Orphan's Court, which the act requires. The sale therefore was void, and the decree for contribution, which was an incident to that sale, was also void.   No act done by the appellees, can estop them from alleging the want of jurisdiction.   No estoppel ever gave jurisdiction.   It cannot be given even by consent. Viewing this matter in any light in which it can be placed, the decree of the Orphan's Court was wrong, and the Circuit Court did right in reversing it.

The opinion of the Court was delivered by

Rogers, J.—The creditors of *George Rhoads* applied to the Orphan's Court, of the county of *Lehigh* for contribution, on the ground that the property of *George Rhoads* had been taken to pay the debts of *Peter Rhoads* the elder, deceased, the property having been sold under an order of the court, decreeing a sale for the payment of debts.

The application was made, under the act of 11th of *April*, 1811, the preamble of which sufficiently explains the reason of its enactment.   In *all cases* after the final settlement of any administration account in the Orphan's Court, if it shall appear there are not sufficient assets to pay and satisfy the balance appearing to be due and owing from the estate of the deceased, it shall be lawful for the said court, on the application of the executors or administrators, or any others interested therein, to make an order that so much of the real estate of which the deceased was seized or possessed at the time of his decease, shall be sold by the executors or administrators, as in the judgment of the court shall be sufficient to satisfy such balance.

The 4th of *February*, 1820, *Peter Rhoads*, acting executor of *Peter Rhoads* deceased, (*George Rhoads* having been previously dismissed) petitioned the Orphan's Court for an order to sell, &c.   The 4th of

(Case of Peter Rhoads' estate.)

*February*, 1819, *George Rhoads* and *Peter Rhoads*, presented an administration account, which on the 7th of *May*, 1819, was read and confirmed *nisi*. There was due to the accountants the sum of one thousand nine hundred and eighty seven dollars, and sixty two cents, in addition to which there were debts outstanding, as was shown on the face of the account, which swelled the debts of the deceased to upwards of four thousand dollars. On this exhibit the executor prayed an order of sale, which was granted, and the property of *George* was sold and applied to the payment of debts, &c. This was then such a final settlement of an *administration account* as comes within the meaning of the act; the amount of the personal estate as appeared to the court in an account presented, advertised and confirmed, to be insufficient to pay debts. The requisition of the act of 1811, being then complied with, the court was justified in its order of sale, for the purposes mentioned in the petition of the executor. The act does not require that the estate should be finally settled, but that an administration account should be passed and confirmed in due form of law; but is this such a case as authorizes the Orphan's Court to decree contribution? It has been properly observed, that the act of 1st of *April*, 1811, does not create the right to contribution; but prescribes the remedy. The act is remedial, and should receive a favourable construction. There is a peculiar propriety and fitness in the Orphan's Court which ordered the sale, and which has power to bring all the parties in interest before them, decreeing the contribution. The creditors of *George*, whose property has been taken, apply to the court under whose direction this has been done, to compel the parties in interest to contribute in proportion to the benefit they have received. It is particularly proper, here, that the court should give a remedy, as it was on the petition of *Peter*, the acting executor, that the sale was decreed, and an objection of the want of form, comes with a bad grace from him. The language of the act is sufficiently broad to embrace the case. In all cases where the court have power to order a sale, they have likewise the power to decree the contribution, which shall be made by the heirs and devisees respectively. Had the devise been made in severalty, it would scarcely be doubted that the creditors of *George* would be entitled to contribution, and what difference can it make, that the devise is to the sons as tenants in common; they are in either as devisees or heirs, with an undivided interest it is true, but this is afterwards converted into an interest in severalty. Had the lands been divided by writ of partition, *George* would have been entitled to redress in the Orphan's Court, for the heirs are not bound to wait until the debts are paid before they make partition. It may be done immediately on the death of the testator or intestate. It is said that no partition was made; and if this be so, then the creditors have no right to contribution. They would be entitled to the share of the land which remains after payment of debts. Whenever a question of the kind arises incidentally or directly, the Orphan's Court must

(Case of Peter Rhoads' estate.)

decide it, or may, if they deem proper, direct an issue, but this is no reason for denial of jurisdiction to the court. The property was valued and appraised in lots, numbered by men chosen by them without any designation of the devisees, to whom the respective portions were allotted. With the appraisement as the basis of the arrangement the devisees enter into the agreement of partition of the 15th of *April,* 1816. This it is said is an agreement for a partition, and not a partition of the property. The words of the agreement are " that the said parties have made and by these presents do make a full and just partition of all the messuages, lands, tenements, and hereditaments, which they now hold as tenants in common by virtue of the last will and testament, &c." In every agreement the intention of the parties is to govern, and there is no rule of law so stubborn that it will not recede from words to enforce the meaning of the parties. If the intention is clear that an estate shall pass, courts will construe deeds in support of that intention, different from the formal nature of those deeds. *Plow.* 290. 3 *Burr.* 1477. 1 *Atk.* 8. 4 *Yeates,* 298. 1 *Yeates,* 393.

When we couple the words of the deed, with acts of the parties in taking possession of their respective portions allotted in the agreement, improving and selling parts of the same, the intention cannot be mistaken. The deed contains a covenant for the execution of a deed of partition, and such other legal assurances as might be deemed necessary on or before a certain specified time. No other assurance would seem to have been deemed necessary, and it will not now do to permit the partition to be avoided for that reason, when the circumstances of the parties and the value of the property have so materially changed. It is further objected that *Catherine Blumer* should have acknowledged the instrument in due form of law. To this I answer, that the act of 24th of *February,* 1770, does not apply to a partition, but establishes a mode by which husband and wife may convey the estate of the wife. In partition under an order of the Orphan's Court the wife is not made a party. The order is made on a petition by the husband, in right of his wife. I can perceive no good reason why such a partition as this should not be valid, particularly when it appears to be for the advantage of the wife, and for the benefit of her heirs, who now seek its enforcement against the executor, on whose petition the land had been sold. And this is in accordance with the principle of the court, in *Burke* v. *Lessee of Young,* 2 *Serg. & Rawle,* 386. There is no person here making any objection who has a right to object.

　　　　　　　　　　　Judgment of the Circuit Court reversed.