# In the Court of Common Pleas of Schuylkill County.

## (*In Equity.*)

## ERNST *et al. v.* ZERBE.

1. A *feme covert* may become a party to a parol partition of lands, held by her with others as tenants in common.

2. Such a partition, executed by marking the lines of division upon the ground, followed by a corresponding possession in pursuance of the agreement, is good, notwithstanding the statute of frauds.

3. Partition neither enlarges nor diminishes the estate of each tenant in common. It is less than a grant. The act of 24 February, 1770, which establishes the only way by which husband and wife may convey the estate of the wife, does not apply to partition.

Opinion delivered April 6, 1874, by

PERSHING, P. J. The heirs of John Clauser, ten in number, were tenants in common of a tract of land situate in Branch township, Schuylkill county. Martin Zerbe, the defendant, is the husband of Catharine Zerbe, one of the plaintiffs, and also one of the heirs of said John Clauser. The bill in this case prays for a decree to compel Martin Zerbe to specifically perform and carry out the terms of an amicable partition of the said tract of land, and to execute proper conveyances to the several parties.

It appears from the evidence, that in 1867 a parol agreement was entered into by which the land was to be divided, the purparts to be equal in size, except the one which would include a house erected on the land. A piece of ground, containing about fifteen or twenty acres, known as the Dundas interference, the title to which was in litigation, was excluded from the division. The heirs held several meetings before the survey was made, at none of which were they all in attendance, but the uncontradicted evidence is, that Catharine Zerbe, the wife of the defendant, was present at these meetings, and consented to the making of the partition, and that the consent of *all* the heirs was had. The evidence, however, fails to show that the defendant was present at any meeting held in reference to the division of the land.

Allen Fisher, Esq., who was employed as the surveyor, divided the land into purparts of eleven acres and one hundred and twenty-five perches each, except the purpart on which the house stood (No. 2), which contains but six acres and six perches, and the part allotted to Abm. Ernst, which included one or two purparts acquired by purchase from some of the other heirs. The bill alleges, what seems to be established, that the heirs took possession of their respective purparts in pursuance of said parol partition, and now hold possession of the same ; that Catharine Zerbe, wife of the defendant, took possession of division or purpart No. 3, under said amicable partition, and still holds possession of the same under the terms of the agreement. The fourth paragraph of the bill sets forth "That

all the other heirs, including Catharine Zerbe, the wife of said defendant, have executed proper conveyances to each other for their respective portions, and are ready and willing to deliver the same, in accordance with the terms of the division made as aforesaid, as soon as signed and executed, by the said Martin Zerbe, the defendant who refuses to execute said conveyance, although in possession of his wife's portion under said agreement and in receipt of the rents and profits thereof "

The answer of the defendant denies that he ever agreed to any partition of the land referred to, and alleges that the partition to which his wife consented was not made according to the agreement; that he nor his wife, "so far as he (defendant) knows," were ever satisfied with the partition attempted to be made, and that neither he nor his wife, so far as he (defendant) knows," ever took possession of division No. 3, under or in pursuance of said amicable partition, but that his wife was in possession of the same house and small piece of land long prior to any attempted amicable partition of said lands.

It is part of the evidence that Mrs. Zerbe was in the occupancy, prior to the making of the partition, of about one acre of ground, and a small house built upon it, and that these were included in purpart No. 3, allotted to her as her share of the land which was divided.

The evidence reported by the examiner shows that the defendant went to the office of Justice Hime, for the purpose of signing the deeds, on the 24th of June 1871, on which day the deeds were signed by Mrs. Zerbe and other of the heirs, all of whom were satisfied; that Martin Zerbe "began to wrangle about the disputed (Dundas) land," that he said he was willing to sign all the deeds but that of Ernst, which he refused to sign "on account of his friend Philip Clauser;" that he afterwards went to Esq. Hime's office along with Mr. Ernst, to sign the deeds, when it was discovered that the deed to Mrs. Ernst included the Dundas interference; that he at that time did not sign any of the deeds because, as he alleged, his lawyer had thus advised him; that afterwards he told the justice that the true reason why he refused to sign the deeds was that Ernst had secured a piece of ground and built a tavern on it, which he, the defendant, had intended purchasing for the same purpose. To another witness the defendant stated his willingness to sign all but the deed to Ernst, who had overcharged him for some hauling. Whether his reasons were good or bad, the fact remains that the defendant did not execute the deeds. It was further shown that Martin Zerbe fenced in the 11 acres and 125 perches, being purpart No. 3, and that he and his wife, since the division and allotments were made, have cut timber from said land and sold it. There was also in evidence before the examiner a written contract purporting to be signed by Martin Zerbe and Catharine Zerbe, his wife, stipulating for the sale of the coal right in said purpart. In reference to this paper it is to be observed, that Martin Zerbe testifies he never signed

his name to it, and denies that he ever admitted that the signature was his. That defendant did not sign this paper is shown by the testimony of Abraham Ernst, who admits that he appended Mr. Zerbe's name to it at the request of Mrs. Zerbe at a time when Martin Zerbe was not present.

Taking the evidence in its entirety, is it sufficient to authorise a decree of specific performance against the defendant?

To take the case out of the statute of frauds, the parol contract must not only be established by competent proof, but it should be clear, definite, and unequivocal (Br. Eq. 191), and it requires much less strength of case on the part of the defendant to resist a bill to enforce a contract, than it does on the part of the plaintiff to maintain a bill to enforce specific performance. Br. Eq. 200. Taking these well established principles as our guide, we think the clear, precise, and satisfactory proof, which alone will warrant the decree of specific performance prayed for, is wanting in this case. The defendant did not attend any of the meetings where the partition was agreed upon and its conditions fixed. His living on the premises assigned to his wife, fencing the land, and, with her, selling timber cut from it, can be explained without making it that exclusive possession necessary to take a parol contract out of the statute. A husband will not be compelled to separate from his wife and family in order to show his dissent from a parol partition of lands made between his wife and the other heirs in interest. If no other difficulty lay in the way of making a decree, it is not clear to us that the defendant should be compelled to sign the deeds which have been prepared and signed by the heirs of John Clauser. They are conveyances in the usual form, for a valuable consideration, containing all the usual covenants, including that of general warranty, and make no reference whatever to the partition they are designed to carry into effect.

Nor do we think it necessary to the validity of the partition that the defendant, as the husband of one of the heirs, should sign the deeds. We are satisfied from the undisputed evidence in this case, that a parol partition was made with the knowledge and consent of all the heirs; that the lines of division of the several purparts were marked upon the ground, and that this was followed by a corresponding separate possession. Such a partition between tenants in common is good, notwithstanding the act for the prevention of frauds and perjuries. Ebert *v.* Wood, 1 Binn. 216. No one of the heirs has made any objection to the division made. The allegation of the defendant that his wife was not satisfied, is refuted by the absence of any testimony from herself to that effect, as well as by her willingly signing the deeds in evidence before the examiner; by her own and her husband's possession of, and the fencing in of her purpart, and by their making profit off the land by the sale of the timber. The force of this is not broken by the fact that Mrs. Zerbe had a foothold before the partition (in what way does not appear) of one acre of the whole tract.

It was not till after the partition that she entered in possession of the eleven acres, one hundred and twenty-five perches, constituting division No. 3, and it is not denied that this entry was by virtue of, and in conformity with, the partition.   McMahan *v.* McMahan, 1 Harris 376, in some of its facts resembles this case.   Judge Bell, in that case, said, "It is long since settled that parol partition, if fair and equal, executed by a corresponding possession, is good, though some of the tenants be under coverture, and others of them elect to hold their purparts as before, by community of possession."

In Darlington's Appeal, 1 H. 430, it was decided that it made no difference that one of the parties, a married woman, never formally conveyed her interest in the part of the estate allotted to the other heir.   The agreement to make partition was actually executed by lines of division marked upon the ground, followed by corresponding possession, which was sufficient to perfect it even as between joint tenants, and tenants in common. It is there held that the tenure, under our system of descents, partakes of the nature of coparcenary, and that a parol partition between heirs in Pennsylvania is good.

Partition between coparceners (and tenants in common) neither amounts to, nor requires an actual conveyance.  It is less than a grant. It only adjusts the different rights of the parties to the *possession*.   At common law a partition between parceners by parol was legal and efficacious, though they might make a valid partition by deed, or by release; Allnatt on Partition *124–5.   The partition does not convey or make any alterations in the estate.   Ib. 144.   It neither enlarges or diminishes the estate of each tenant in common, but ascertains the particular part of each and gives it to him in severalty.   The tenure, however, is no more changed by the partition than by the adjustment of a boundary.   The parties hold after it by exactly the same title as that by which they held before it. A married woman may therefore be a party to an amicable partition, for she makes no grant.   The act of 24th Feby., 1770, which provides the only way in which husband and wife can legally convey the lands of the wife, has no application to a partition.   Rhoads' Estate, 3 Rawle, 420.

The act of 1770 is not repealed by the act of 1848, in this respect. Peck *v.* Ward, 6 H. 506.

A *feme covert* being compellable to make partition may become a party to an amicable action of partition, and so also may minors by their guardians.   Wetherell *v.* Meck, Bright R. 135.

Family arrangements are regarded with favor, and a parol partition among heirs, if fairly made, is binding even upon *femes covert*, if they are parties to it, and assent to the arrangement.   But it is binding only when the partition has been agreed to by all the the joint owners, and when it has been executed.   It need not be of all the lands which the parties hold in common or jointly, but it must be complete so far as it relates to

the part set out in severalty.   McConnell *et ux. v.* Carey *et ux.*, 12 Wr. 345.   See also Calhoun *v.* Hayes, 8 W. & Ser. 127.

These authorities settle that a parol partition of lands even where some of the parties are *femes covert*, is good, if equal and executed by the taking of possession of the several purparts; that such partition is not a conveyance of the wife's interest in her real estate, in which her husband must join to give it legal effect.

While we do not think the evidence will warrant a decree of specific performance, we do think there is sufficient disclosed against the defendant to make it proper that the order for the dismissal of plaintiff's bill shall be without prejudice.   The plaintiff's bill is dismissed without prejudice, with costs to defendant.

## In the Supreme Court of Pennsylvania.

### DeHAVEN'S APPEAL.

1. Under sec. 41, act of 15th of March, 1832, an issue *devisavit vel non* is of right whenever a dispute upon a matter of fact arises before the register's court.

2. But the fact must be material to the subject of controversy, a substantial matter of dispute, necessary to be determined, before a decision can be reached.

**Appeal from the decree of the register's court of Philadelphia.**

Opinion delivered March 9, 1874, by

AGNEW, C. J.   This case is an unsuccessful attempt to convert physical weakness and mental distress into imbecility of mind, and to extract undue influence over the judgment and will of a parent, from filial affection and devotion to the parent's welfare and happiness.   Mrs. Sophia DeHaven's husband was an invalid for years, and for months before his death a bedridden sufferer.   Some of her sons were irregular in life, and disposed to draw heavily upon her purse.   She, the wife and mother, whose will is in controversy, was a woman of great sensibility, quick in feeling, and ardent in affection.   In prosperity she was lively and pleasant, and happy while the current of life ran smoothly ; but in affliction she became nervous, excitable, despondent, and full of tears.   Owing to the long continued sickness, suffering, and death of her husband, the misery arising from her sons, and the death of John, she frequently gave way to grief, and became unable to control her feelings, and was seized with hysteria of the most marked and distressing character.   During this gloomy period of her life, it caused her to cry and laugh in the same instant, and to the unthinking to appear to be beside herself.   Under such circumstances it was not difficult to find persons ready to believe Mrs. DeHaven's mind had become unsettled, and to form opinions of her unsoundness, founded on these exhibitions of distress and hysteria.   These opinions form the principal staple of the case of the appellants ; while facts of a distinct and convincing kind are entirely wanting.   On the other hand, the proof of Mrs. DeHaven's competency not only to make a proper dis-